## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, ERIC MADRY, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, being duly sworn under oath, hereby depose and state:

1. I am a law enforcement officer of the United States, and under 18 U.S.C. § 3051, I am charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States, may carry firearms, serve warrants and subpoenas issued under the authority of the United States, make arrests without warrant for any offense against the United States committed in my presence, or for any felony under the laws of the United States if there are reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since July 19, 2020. I have completed the Federal Criminal Investigator Training Program, along with ATF Special Agent Basic Training at the Federal Law Enforcement Training Center located in Glynco, Georgia. As a result of my training and experience as an ATF Special Agent (SA), I am familiar with a wide array of Federal Criminal Law. In addition to the firearms, arson, and explosives related training received in the previously mentioned courses, I have conducted and/or participated in investigations involving firearms, firearms trafficking, and drug trafficking. I have received field training and accrued practical experience in the following areas: surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation, interception, and analysis of recorded conversations, and in analyzing cellular telephone data and locations.

3. I was previously employed as a State Trooper with the Indiana State Police Department, from May 2016 through June 2020. I am a graduate of the Indiana State Police Academy which is in Plainfield, Indiana. Indiana State Police training consisted of twenty-six weeks of training in the following areas: Indiana State criminal and traffic law, crash investigations, criminal and traffic law enforcement, surveillance, interviewing both witnesses and suspects, applying for search and arrest warrants, writing case reports, completing charging affidavits, processing crime scenes, submitting evidence, and testifying in court.

4. I have conducted numerous investigations involving the possession, distribution, and trafficking of controlled substances, in addition to the concealment of illicit proceeds from the sale of the controlled substances, violation of Federal firearm laws, and use of firearms in furtherance of other criminal offenses. In conducting these investigations, I have utilized a variety of investigative techniques and resources, including but not limited to surveillance, utilizing confidential informants, exploitation of telephone and social media data, the interception of wire communications under Title III, interviews, and the review of financial documents. I am presently assigned to ATF's Cleveland Field Office.

5. The facts contained in this Affidavit are based upon my personal knowledge of the investigation, in addition to the knowledge, training, experience, and the observations of other law enforcement officers. All observations and information referenced below that were not personally made or learned by me, were relayed to me by the persons who made such observations or learned such information, to include being provided information verbally or in written format. This Affidavit contains information necessary to support probable cause for this application. This Affidavit is not intended to be a complete review of all topics discussed in interviews or conversations referenced herein. In addition, this Affidavit is not intended to

include each, and every fact and matter observed or known by me, other law enforcement officers, or the government.

6. I am submitting this affidavit in support of a Criminal Complaint and Arrest Warrant pursuant to the Federal Rule of Criminal Procedure, including Rules 3, 4 and 4.1.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1) (Felon in possession of a firearm) and Title 18, United States Code, Section § 922(a)(1)(A) and 924(a)(1)(D) Engaging in the Business of Importing, Manufacturing, or Dealing in Firearms without a Federal Firearms License have been committed by Darsean SCOTT.

## PROBABLE CAUSE

8. On or about February 8, 2023, the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating Deshane IRONS for violations of federal law. During the investigation, ATF undercover (UC) personnel and IRONS agreed to meet on or about February 8, 2023, at a predetermined location for IRONS to sell the ATF UC personnel a Glock handgun and narcotics. While the sale was being arranged, IRONS informed ATF personnel that IRONS's associate, later identified as Darsean SCOTT, would have a rifle for sale.

### SCOTT sells firearms on February 8, 2023

9. Later, on or about February 8, 2023, SA Madry met with the ATF Confidential Informant (CI) and an ATF Undercover (UC) Agent at a predetermined location. The ATF CI's person was searched, no contraband was located.

10. SA Madry provided the ATF CI and the ATF UC Agent with government funds for the purchase of the rifle, Glock handgun, and narcotics. Additionally, SA Madry

3

provided the ATF CI and ATF UC Agent with audio/video recording devices and surveillance devices. The ATF CI and ATF UC Agent entered the ATF UC vehicle. The ATF UC and ATF CI departed the predetermined location and arrived at the location to meet SCOTT and IRONS.

11. SCOTT and IRONS both arrived in a 2014, silver Nissan Rogue, bearing Ohio license plate number JDG2149.

12. The ATF UC Agent observed that SCOTT was seated in the driver's seat of the Nissan and noticed that the window was down. SCOTT stated, "I got hella shit though, that them bitches be" and "I got all type of shit." The ATF Agent observed that SCOTT had a Springfield handgun sitting on SCOTT's lap and asked, "yours for sale?" SCOTT replied, "yea, I got hella shit for sale." SCOTT informed the ATF UC Agent that he would sell the firearm for "$7".  Your affiant is aware based off his training and experience that this statement meant a price of $700.  The ATF UC Agent replied, "what is it, an XD, 9" SCOTT replied, "yep." The ATF UC Agent stated, "I'll do $7 for it." The ATF UC Agent counted out seven hundred dollars ($700.00) in government funds. SCOTT stated, "y'all need to call me, I got hella shit, though, I ain't goin' to fake to yall." The ATF UC Agent handed SCOTT the government funds, the ATF UC Agent retrieved the handgun from SCOTT and placed it on the front seat of the ATF UC vehicle.  SCOTT also provided his telephone number to the AF UC Agent.

### Scott sells additional firearms and narcotics on February 15, 2023

13. On or about February 14 and 15, 2023, SCOTT finalized the offer to sell ATF UC Agent an AR-15 rifle, a Springfield XD handgun, an FN handgun, a Smith and Wesson firearm, a ballistic vest, and heroin for three-thousand one hundred-dollars ($3100). SCOTT

4

and the ATF UC Agent texted back and forth facilitating the purchase. SCOTT sent pictures of approximately seven (7) firearms to the ATF UC Agent as well.

14. On February 15. 2023, ATF UC Agent and SCOTT agreed that the deal would take place at the predetermined location.

15. Later on February 15, 2023, ATF UC Agents were provided pre-recorded government funds before the purchase. The two ATF UC Agents operated an ATF UC vehicle during the operation.

16. The two ATF UC Agents arrived at the agreed to location. SCOTT arrived inside of the same previously mentioned 2014, Nissan, and parked next to the ATF UC vehicle. SCOTT exited the driver's seat of the Nissan and met with ATF UC Agents at the rear of the Nissan. While standing at the rear of the Nissan, SCOTT showed the ATF UC Agents the American Tactical Incorporated, model AR-15, multi-caliber rifle bearing serial number NS225312, which SCOTT retrieved from the trunk. SCOTT stated, "the other ones in the front." ATF UC Agent#1 examined the rifle, then handed it to ATF UC Agent#2 who placed it in the trunk of the ATF UC vehicle. SCOTT then went to the rear, driver's side door of the vehicle, retrieved a Safariland Armor, bulletproof vest, bearing serial number 10180469508, and handed it to ATF UC Agent#1, who then handed it to ATF UC Agent#2, who then placed it in the rear of the ATF UC vehicle. SCOTT then went to the driver's door of the Nissan and reached in. ATF UC Agent#1 stood at the rear of the Nissan and could see SCOTT retrieving the additional handguns from inside and under the dash area and center console area of SCOTT's vehicle.

17. ATF UC Agent#1 and ATF UC Agent#2 observed SCOTT holding a silver and black handgun. SCOTT reached back into the car and retrieved an FN handgun, a

5

Springfield handgun, and released fully loaded magazines from those as well, then placed them in the gym bag provided by ATF UC Agent#2. ATF UC Agent#2 examined the firearms, ATF UC Agent#1 paid SCOTT with the government funds. ATF UC Agent#2 asked SCOTT, "you got that ball?" SCOTT obtained a clear plastic baggie containing suspected heroin form his pocket and handed it to ATF UC Agent#1. The purchase was then concluded.

### Scott sells additional firearms and narcotics on February 28, 2023

18. From about February 20- 28, 2023, SCOTT advertised eight (8) additional firearms for sale, along with narcotics. SCOTT and the ATF UC Agent texted back and forth facilitating the purchase. SCOTT sent pictures of numerous firearms to the ATF UC Agent as well.

19. On February 28, 2023, before the purchase, SCOTT was observed via ATF surveillance exiting the front door of the residence. SCOTT was observed entering his vehicle, depart the residence, and, arrive at the agreed location a short time later.

20. On February 28, 2023, ATF UC Agents were provided pre-recorded government funds before the purchase.

21. The ATF UC Agent arrived at the agreed upon location and observed SCOTT's vehicle backed into a parking spot in the parking lot. SCOTT rolled down the driver's side window of the Toyota and motioned for ATF UC Agents to come to his vehicle. The ATF UC Agents entered SCOTT's vehicle, SCOTT handed ATF UC Agent#1 a clear plastic baggie containing approximately 5.9 grams suspected heroin. ATF UC Agent#1 then handed SCOTT the government funds. SCOTT later handed ATF UC Agent#1 two Glock handguns. ATF UC Agent#1 then asked SCOTT "you got another pole on you my boy can

buy?" SCOTT then lifted up his shirt and retrieved a silver, Kahr handgun, which was tucked in his waist band and stated, "I got this, a Sccy, I mean a Kahr." ATF UC Agent#2 asked, "what do you want for it?" SCOTT replied, "what you got back there?" ATF UC Agent#2, "what do I got or what am I willing to give? 5?" SCOTT replied, "yea come on, that's cool." SCOTT then handed the handgun to ATF UC Agent#1, who then handed it back to ATF UC Agent#2. SCOTT stated, "make sure you wipe that off for me, man." The ATF UC Agent exited the SCOTT's vehicle and separated from SCOTT.

22. SCOTT departed the location and returned to his residence.

### Interstate Nexus Determination of Firearms

23. On or about March 14, 2023, ATF SA Gerrod Brigg, a Firearm Interstate Nexus Expert, was provided the firearms information for the following firearms which SCOTT sold to the ATF UC Agents during the course of this investigation:

- Springfield, Model XD9, 9mm Caliber, Handgun, S/N: BB142631
- ATI, Model ATI-15, Muli Caliber, Handgun, S/N: NS225312
- Springfield, Model XD45, 45 Caliber, Handgun, S/N: S3306381
- FN, Model 503, 9mm Caliber, Handgun, S/N: CV005582
- Smith and Wesson, Model SD9VE, 9mm Caliber, Handgun, S/N: FCN2541
- Kahr, Model Security-9, 9mm Caliber, Handgun, S/N: EA1883
- Glock Model 19, 9mm Caliber, Handgun, S/N: BXDG898
- Glock, Model 48, 9mm Caliber, Handgun, S/N: AFPX333

SA Briggs stated that based on his knowledge, training, and experience, the above listed firearms were not manufactured in the State of Ohio. Thus, proving the firearm previously traveled in interstate commerce.

### Scott's Prohibiting Prior Convictions

24. SCOTT was convicted out of the Cuyahoga County Court of Common Pleas of the following offenses which are punishable by more than one year in prison and federally prohibit SCOTT from possessing firearms and ammunition:

    a. Burglary, on or about September 12, 2016, in CR-15-601382.

    b. Robbery and Attempted Felonious Assault, on or about February 29, 2012, in CR-11-556971.

### CONCLUSION

25. Based upon the **above** listed facts and circumstances, your affiant believes and assert that there is probable cause to believe that Darsean SCOTT did knowingly and intentionally engage in activity which violated the following offenses: Title 18, United States Code, Section §922(g)(1), Felon in Possession, and Title 18, United States Code, Section § 922(a)(1)(A) and 924(a)(1)(D), Engaging in the Business of Importing, Manufacturing, or Dealing in Firearms without a Federal Firearms License.

27. Based on the foregoing, your affiant respectfully requests that a Criminal Complaint and Arrest Warrant be issued for Darsean SCOTT for the above referenced violations of Title 18, United States Code, Section §922(g)(1) and Title 18 United States Code, Section § 922(a)(1)(A) and 924(a)(1)(D).

_____
Eric Madry, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBSCRIBED AND SWORN TO ME THIS 15th DAY OF MARCH 2023
VIA TELEPHONE AFTER SUBMISSION BY RELIABLE ELECTRONIC
MEANS. FED. R. CRIM. P. 4.1 AND 41(d)(3).

_____
James E. Grimes Jr., United States Magistrate Judge